# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WILEY ESTILL GAMBREL,                    )
                                         )
                   Petitioner,           )        Civil Action No. 21-888
                                         )
            v.                           )        District Judge Arthur J. Schwab
                                         )        Magistrate Judge Maureen P. Kelly
ATTORNEY GENERAL OF THE STATE            )
OF PENNSYLVANIA;                         )        Re: ECF No. 1
DISTRICT ATTORNEY OF FAYETTE             )
COUNTY; and                              )
SUPERINTENDENT OF SCI HOUTZDALE          )
                                         )
                   Respondents.          )

## REPORT AND RECOMMENDATION

### I.     RECOMMENDATION

For the reasons that follow, it is respectfully recommended that the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (the "Petition"), ECF No. 1, be denied.  It is further recommended that a certificate of appealability be denied.

### II.    REPORT

Wiley Estill Gambrel ("Petitioner") is a state prisoner currently incarcerated at the State Correctional Institution at Houtzdale ("SCI-Houtzdale"), in Houtzdale, Pennsylvania.

Petitioner initiated the instant federal habeas corpus proceeding by submitting the Petition, which was received by this Court on July 12, 2021. Id. at 1.  The Petition included a certificate of service dated July 4, 2021, which is the presumptive effective filing date under the prisoner mailbox rule. Id. at 24.  See also Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998).

#### A.  Factual Background and Procedural History

The Pennsylvania Superior Court summarized the factual background of the crimes of which Petitioner was convicted as follows.

On July 17, 2017, [Appellant] went to the residence of James Plance (hereinafter Victim) and his girlfriend, Deana Hughes located at 280 Ringer Road, Georges Township, Fayette County Pennsylvania. Once at the residence, the three individuals began to imbibe alcohol and use crack cocaine. The individuals continued indulging in these activities until the early morning hours of July 18, 2017.

Hughes testified that in the early hours of July 18, 2017, Victim and Hughes were in the kitchen of the residence while [Appellant] was outside at his van; Hughes stated that [Appellant] walked in with a firearm and pointed it at Victim. [Appellant] allegedly shot Victim once in the head; then Hughes and [Appellant] wrapped the corpse in a tarp, put it in a box and transported the corpse to [Appellant's] garage located at 3540 Morgantown Road, Georges Township, Fayette County Pennsylvania. [Appellant] and Hughes then returned to the residence and attempted to clean up Victim's blood that was left in the kitchen. After the attempted cleaning, Hughes asked to be taken to her aunt's residence and [Appellant] complied. Once at her aunt's residence, the police were contacted and informed of the events that transpired.

After his apprehension, [Appellant] was transported to the Uniontown State Police Barracks and taken into an interview room for the purposes of questioning. [Appellant] was read his *Miranda* rights at 14:18 on July 18, 2017, and at this time, he requested a lawyer. Trooper Sizer then asked [Appellant] preliminary questions as well as public safety questions, such as, where the firearm was located. [Appellant] indicated that the firearm was in his van. [Appellant] was then escorted from the interview room and made aware of possible charges against him; at this point, [Appellant] changed his mind and decided that he wished to waive his right to an attorney. [Appellant] was then re-read his *Miranda* rights at 14:30, at that time he signed the waiver for said rights and began talking to Troopers Sizer and Mrosko where he made a full, detailed, confession where he admitted that he shot the Victim.

Com. v. Gambrel, No. 719 WDA 2021, 2022 WL 2952334, at *1 (Pa. Super. Ct. Jul. 26, 2022)

(emphasis and brackets as in the Superior Court's opinion, internal footnote omitted).

Following a jury trial in the Court of Common Pleas of Fayette County, Pennsylvania,

Petitioner was convicted of the following crimes:

- Murder of the Third Degree, in violation of 18 Pa. C.S.A. § 2502(c);

- Abuse of a Corpse, in violation of 18 Pa. C.S.A. § 5510;

- Tampering with or Fabricating Physical Evidence, in violation of 18 Pa. C.S.A. § 4910(1); and

- Possession of a Firearm by a Prohibited Person, in violation of 18 Pa. C.S.A. § 6105(a)(1).

ECF No. 1 at 1; ECF No. 22-12 at 2-9. See also Docket, Com. v. Gambrel, No. CP-26-CR-1777-2017 (available at https://ujsportal.pacourts.us/Report/CpDocketSheet?docketNumber=CP-26-CR-0001777-2017&dnh=rUmex8EW9kSPR0Q5d9RH8g%3D%3D (last visited Nov. 7, 2024)). On July 18, 2018, Petitioner was sentenced to an aggregate term of imprisonment of 24 to 48 years for these convictions. ECF No. 22-12.

Petitioner filed a Notice of Appeal to the Pennsylvania Superior Court on August 28, 2018, ECF No. 22-13 at 2-3, followed by a statement of concise issues on appeal on September 17, 2018, ECF No. 22-14 at 2, attacking the sufficiency and weight of the evidence supporting the conviction. Id. Specifically, he identified two issues.

> I. Whether the evidence was legally and factually sufficient to prove that [Gambrel] committed the crime of murder in the third degree when the Commonwealth failed to prove, beyond a reasonable doubt, that [Gambrel] killed the victim, James Plance, or in the alternative, that [Gambrel] acted with malice aforethought.

> II. Whether the verdict as to murder of the third degree was against the weight of the evidence when the verdict was so contrary to the evidence as to shock one's sense of justice.

Com v. Gambrel, No. 1228 WDA 2018, 2019 WL 252615, at *2 (Pa. Super. Ct. June 19, 2019). On direct appeal, Petitioner was represented by the same attorney who represented him at trial. ECF No. 22-14 at 2.

The trial court issued a Statement in Lieu of Opinion on October 22, 2018, in which it opined why Petitioner's direct appeal should be denied. ECF No. 22-15 at 2 and 6. The Superior Court affirmed Petitioner's convictions on June 19, 2019. Gambrel, 2019 WL 252615, at *1.

Petitioner filed a Petition for Allowance of Appeal with the Pennsylvania Supreme Court on July 15, 2019. ECF No. 22-17 at 2. *Allocatur* was denied on January 7, 2020. ECF No. 22-18 at 2. The record does not indicate that Petitioner sought a writ of *certiorari* from the United States Supreme Court. Thus, his convictions became final on April 6, 2020 – 90 days after the denial of *allocatur*. U.S. Sup. Ct. R. 13.

Prior to this date, however, on March 2, 2020, Petitioner constructively filed a *pro se* Petition for Post-Conviction Relief under the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. § 9541 et seq. ECF No. 22-19 at 1 and 20. See also Com. v. Little, 716 A.2d 1287, 1288-89 (Pa. Super. Ct. 1998) (so-called "prisoner mailbox rule" applies to PCRA petitions). Soon thereafter, Petitioner obtained counsel, who filed an Amended Post-Conviction Relief Act Petition ("Amended PCRA Petition") on April 15, 2020. ECF No. 22-20 at 2 and 17.

The PCRA trial court held a hearing on Petitioner's PCRA claims on September 30, 2020, at which testimony was taken from Petitioner, as well as from the attorney who had represented him both at trial and on direct appeal. See PCRA Hr'g Tr. dated Sept. 30, 2020, ECF No. 22-21. The trial court filed an Opinion and Order denying PCRA relief as to all claims in the Amended PCRA Petition on January 5, 2021. ECF No. 22-22.

Petitioner appealed the denial of PCRA relief on June 22, 2021.[1] ECF No. 22-23 at 3. He filed a Concise Statement of Issues on Appeal on the same date. ECF No. 22-24 at 3. Petitioner raised the following issues in his PCRA appeal.

> 1. Whether Appellant's legal counsel, Michael Aubele, Esq., was ineffective for failing to develop the argument that Appellant fabricated his police statement because he believed he had cancer?

---

[1] Petitioner moved for leave to file a notice of appeal *nunc pro tunc* on June 14, 2021, which was granted on June 17, 2021. Docket, Gambrel, No. CP-26-CR-1777-2017.

> 2. Whether Attorney Aubele was ineffective for failing to object to hearsay statements made by Christina Rohaley?
>
> 3. Whether Attorney Aubele was ineffective for failing to appeal the trial court's denial to suppress Appellant's statement to Corporal Thomas Ulintz?
>
> 4. Whether Attorney Aubele was ineffective for failing to appeal the trial court's denial of the objection that various photographs were more prejudicial than probative?
>
> 5. Whether Attorney Aubele was ineffective for failing to appeal the trial court's ruling that Appellant could not publish certain photographs of the basement of the residence where the shooting occurred?
>
> 6. Whether Attorney Aubele was ineffective for failing to appeal the trial court's denying the objection that the District Attorney's questioning of the Appellant about the two shot guns constitute facts not in evidence?
>
> 7. Whether Attorney Aubele was ineffective for causing the Appellant to tell the jury that he was being housed in the Fayette County Prison?

Gambrel, 2022 WL 2952334, at *2-3 (renumbered from, but substantially identical to, the issues raised in the Concise Statement of Issues on Appeal, ECF No. 22-24).

On July 26, 2022, the Superior Court affirmed the denial of PCRA relief. Id. at *1. There is no indication in the record that Petitioner sought allowance to appeal from the Pennsylvania Supreme Court.

### B. Federal Habeas Petition

Petitioner raises the following grounds for federal habeas relief in the Petition.

GROUND ONE:     Mr. Gambrel was denied fundamental fairness, the presumption of innocence, and due process when the state court denied relieve there the evidence failed to meet the Commonwealth's burden of proof beyond a reasonable doubt that Mr. Gambrel killed the victim and acted with malice aforethought, thus in violation of the Sixth and Fourteenth Amendments.

GROUND TWO:    Trial counsel rendered ineffective assistance pursuant to the Strickland standard and the Sixth Amendment:

a) Failure to develop argument at trial of fabricated statement by Mr. Gambrel based upon his belief he had cancer.

b) Failure to object to hearsay statements made by Christina Rohaley.

c) Failure to appeal the court's denial of objection that various photographs were more prejudicial than probative.

d) Failure to appeal court's denial of suppression of statement to Corporal Thomas Ulintz.

e) Failure to appeal court's ruling defense could not publish certain photos of the basement of residence where shooting occurred.

f) Causing Mr. Gambrel to admit to jury that he was confined in Fayette County Prison, thus, Sixth Amendment violation.

g) Failure to appeal court's denial that District Attorney's questioning of two shot guns of Mr. Gambrel found at his residence constitutes facts not evidence.

h) Failure to request instruction on lesser-included offense.

i) Failure to challenge the competency of Mr. Gambrel prior to trial.

GROUND THREE:    Commonwealth committed prosecutorial misconduct by failing to correct false testimony by its witness.

ECF No. 1 at 21-23 (renumbered, formatted, and cleaned up for clarity).

Petitioner raised additional issues in his Traverse and in the briefing in support of his

Request for Evidentiary Hearing. ECF Nos. 30, 36, and 56. They are:

- Petitioner's direct appeal counsel was ineffective for failing to appeal the denial of Petitioner's motion to suppress his confession to Troopers Sizer and Mrosko, which he alleges was obtained in violation of Miranda v. Arizona, 384 U.S. 435 (1966).[2]

---

[2] Petitioner's statement to Corporal Ulintz, which underlies the ineffective assistance of counsel claim at Ground 2.d of the Petition, occurred at the time of his arrest. As best as the undersigned can discern, it is separate from the Miranda argument raised in his Request to Evidentiary hearing. See Gambrel, 2022 WL 2952334, at *6 ("Appellant argues that Attorney Aubele was ineffective for failing to appeal the denial of the motion to suppress Appellant's statement to Corporal Thomas Ulintz of the Pennsylvania State Police that '[n]obody [was present in the garage of his workshop] (continued . . .)

ECF No. 35 at 2. <u>See also</u> ECF No. 30 at 9 and ECF No. 56 at 5 and 14-15.

- Both the prosecution and defense counsel should have further investigated Deana Hughes, who Petitioner asserts is the real murderer.  ECF No. 56 at 10-12.

- Petitioner's conviction was a grave injustice.  <u>Id.</u> at 8.

- Counsel's failure to develop the record during Petitioner's PCRA proceeding constitutes "cause" to set aside procedural default under <u>Martinez v. Ryan</u>, 566 U.S. 1 (2012).  ECF No. 57 at 6.

On July 12, 2021, Petitioner moved to stay this federal habeas case while he exhausted remedies in state court.  ECF No. 4.  That motion was granted on July 13, 2021, and Petitioner was ordered to move to lift the stay no later than 60 days after the conclusion of his state court proceedings.  ECF No. 5.

The public record reveals that, on July 26, 2022, the Pennsylvania Superior Court affirmed the denial of PCRA relief.  <u>See</u> <u>Gambrel</u>, 2022 WL 2952334, at *1.  There is no indication that Petitioner sought leave to appeal the Superior Court's PCRA decision.   Thus, Petitioner's proceedings in state court ended on August 25, 2022 – the conclusion of the 30-day period of time for him to seek leave to appeal from the Pennsylvania Supreme Court.  Pa. R.A.P. 1113.

As such, were Petitioner to have complied with this Court's Order at ECF No. 5, he would have moved to lift the stay within 60 days of August 25, 2022 - or by October 24, 2022.  But he did not.  Instead, Petitioner did not seek to reopen this case until March 9, 2023 – 136 days late. ECF No. 6 at 4.

---

that is alive at least.' N.T., 7/10/18, at 47. Appellant made this statement upon being detained by Corporal Ulintz outside of the garage and patted down for weapons; Corporal Ulintz asked Appellant 'if anything was in there' in reference to Appellant's right pocket, and Appellant responded 'nobody that is alive at least.' *Id.* at 45-47. Corporal Ulintz then asked him to clarify his statement and Appellant said, 'I thought you were talking about inside the garage, not inside my pocket.' *Id.* at 47-48. Corporal Ulintz did not further inquire as to who might be inside the garage. *Id.* at 48.").

In spite of Petitioner's tardiness, the stay of this case was lifted on March 15, 2023, ECF

No. 8, and service was ordered the following day, ECF No. 9.  After one missed deadline and two

extensions of time, Respondents answered the Petition on July 19, 2023.  ECF No. 22.  Petitioner

filed his Traverse on September 6, 2023.  ECF No. 30.  The Petition is ripe for adjudication.

## C. Procedural Issues

Before this Court addresses the merits of Petitioner's federal habeas claims, it will address

whether the Petition fulfills the applicable procedural requirements, as set forth in the

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

### 1. The AEDPA statute of limitations

The first consideration in reviewing a federal habeas corpus petition is whether the petition

was timely filed within the applicable statute of limitations.  In 1996, Congress enacted the

AEDPA, which generally established a strict one-year statute of limitations for the filing habeas

petitions pursuant to 28 U.S.C. § 2254.  The applicable portion of the statute is as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for
> a writ of habeas corpus by a person in custody pursuant to the
> judgment of a State court.  The limitation period shall run from the
> latest of –
>
> (A) the date on which the judgment became final by the
> conclusion of direct review or the expiration of the time for
> seeking such review;
>
> (B) the date on which the impediment to filing an application
> created by State action in violation of the Constitution or laws
> of the United States is removed, if the applicant was prevented
> from filing by such State action;
>
> (C) the date on which the constitutional right asserted was
> initially recognized by the Supreme Court, if the right has been
> newly recognized by the Supreme Court and made retroactively
> applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

The United States Court of Appeals for the Third Circuit has held that the statute of limitations set out in Section 2244(d) must be applied on a claim-by-claim basis. Fielder v. Varner, 379 F.3d 113, 122 (3d Cir. 2004), cert. denied sub nom. Fielder v. Lavan, 543 U.S. 1067 (2005). Thus, in analyzing whether a petition for writ habeas corpus has been timely filed under the one-year limitations period, a federal court must undertake a three-part inquiry. First, the court must determine the "trigger" date for the individual claims raised in the petition. Typically, this is the date that the petitioner's direct review concluded and the judgment became "final" for the purposes of triggering the one-year period under Section 2244(d)(1)(A). Second, the court must determine whether any "properly filed" applications for post-conviction or collateral relief were pending during the limitations period that would toll the statute pursuant to Section 2244(d)(2). Third, the court must determine whether any other statutory exception or equitable tolling should be applied based on the facts presented. See, e.g., Munchinski v. Wilson, 807 F. Supp. 2d 242, 263 (W.D. Pa. 2011), aff'd, 694 F.3d 308 (3d Cir. 2012) (citing Nara v. Frank, No 99-5, 2004 WL 825858, at *3 (W.D. Pa., Mar. 10, 2004)).

### a.  Delay in request to lift the stay

Here, Respondents initially asserted that the entire Petition was untimely because Petitioner's Motion to Lift Stay was filed outside of the 60 days that Petitioner was given to do so. ECF No. 22 at 7.  However, in their Response to Motion for Hearing, ECF No. 51, Respondents

changed their argument. Now, they argue that, because Petitioner filed his PCRA petition prior to his conviction becoming final, the AEDPA clock did not begin running until August 25, 2022 – 30 days after the Superior Court affirmed the denial of PCRA relief, and the deadline by which Petitioner could have, but did not, file a petition for allowance to appeal to the Pennsylvania Supreme Court. Id. at 18. Respondents concede that, since Petitioner moved to lift the stay less than one year after that date, the Petition, as filed at ECF No. 1, is timely. Id. at 18-19. A review of the record, as set forth above, supports this conclusion. Therefore, Petitioner's claims in the instant Petition are timely.

**b. <u>Miranda</u> claim raised in the Traverse**

Respondents argue that, because Petitioner did not assert his new <u>Miranda</u> claim until he filed his Traverse – which they say was September 6, 2023, but which is entitled to an effective filing date of August 28, 2023, under the prisoner mailbox rule, <u>see</u> ECF No. 30 at 12 – the <u>Miranda</u> claim is untimely under AEDPA because it was filed more than one year after August 24, 2022 – albeit only by four days. ECF No. 51 at 19 and n.2

Respondents do not address whether tolling would be appropriate here. And in this case, this Court is inclined to presume that equitable tolling is appropriate for the 60-day period that Petitioner was given to reopen this case in the Order dated July 13, 2021, which would push the end of the AEDPA's statute of limitations to October 24, 2023. ECF No. 5. Additionally, Petitioner claims that he did not receive the PCRA Superior Court's opinion of July 26, 2022, until sometime more than 60 days after it was issued – although he does not state specifically when he received the opinion. ECF No. 30 at 3-4. But, even presuming that he received the PCRA Superior Court's order on the date that it was issued, tolling the statute of limitations for the 60 days

10

contemplated in this Court's Order dated July 13, 2021, ECF No. 5, would result in the newly asserted <u>Miranda</u> claim being well within the statute of limitations.

However, there are other issues that affect the <u>Miranda</u> claim that will be discussed in more detail below.  Ultimately, it is unnecessary to decide whether the <u>Miranda</u> claim is timely.

### c.  Failure to investigate claim as to Deana Hughes

Even so, Petitioner is not so fortunate with respect his claim that Deana Hughes was insufficiently investigated by the prosecution and his own trial counsel. ECF No. 56 at 11.  To the extent that this is a federal constitutional claim, and was properly raised under Rule 2(c) of the Rules Governing Section 2254 Cases, it was first asserted in Petitioner's Reply to his Request for Hearing, which was effectively filed on August 6, 2024. <u>Id.</u> at 18.  This is almost one year after the October 25, 2023 statute of limitations deadline even with the tolling discussed above. Accordingly, Petitioner's failure to investigate claim is time-barred, and should be dismissed.[3] <u>See, e.g.</u>, <u>Mayle v. Felix</u>, 545 U.S. 644, 650 (2005) ("An amended habeas petition, we hold, does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth.").

The statute of limitations also may be tolled if a petitioner establishes that he is actually innocent of the charges of which he has been convicted.  <u>McQuiggan v. Perkins</u>, 569 U.S. 383, 398-99 (2013) (recognizing an actual innocence exception to the AEDPA's statute of limitations). That said, the Supreme Court cautions "that tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond

---

[3] For the reasons stated below, it also is procedurally defaulted.

a reasonable doubt.'" Id. at 386 (quoting Schlup v. Delo, 513 U.S. 290, 329 (1995)). "The gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" Id. at 401 (quoting Schlup, 513 U.S. at 316). "'[T]he timing of the [petition]' is a factor bearing on the 'reliability of th[e] evidence' purporting to show actual innocence." Id. at 386-87 (quoting Schlup, 513 U.S. at 332).

Petitioner generally asserts his actual innocence. ECF No. 56 at 3. But he has not asserted the existence of new, reliable evidence of his factual innocence. Instead, as best as the undersigned can tell from his filings, he attempts to rehash evidence that already was considered by the state trial court, or to present evidence that would support the conclusion that his confession should have been suppressed. This is not the type of evidence considered in Schlup. Therefore, the actual innocence exception does not save this untimely claim.

## 2. Exhaustion and procedural default

The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief. To comply with the exhaustion requirement, a state prisoner first must have fairly presented his constitutional and federal law issues to the state courts through direct appeal, collateral review, state habeas proceedings, mandamus proceedings, or other available procedures for judicial review. See, e.g., Castille v. Peoples, 489 U.S. 346, 351 (1989); Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996) (abrogated on other grounds by Beard v. Kindler, 558 U.S. 53, 60-61 (2009)); Burkett v. Love, 89 F.3d 135, 137 (3d Cir. 1996).

Moreover, a petitioner must present every claim raised in the federal habeas petition to the state's trial court, intermediate appellate court, and highest available court before exhaustion will

be considered satisfied. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004). A petitioner shall not be deemed to have exhausted state remedies if he has the right to raise his claims by any available state procedure. 28 U.S.C. § 2254(c). The petitioner has the burden of establishing that the exhaustion requirement has been met. Ross v. Petsock, 868 F.2d 639, 643 (3d Cir. 1989); O'Halloran v. Ryan, 835 F.2d 506, 508 (3d Cir. 1987). In the case at bar, it is clear that all of Petitioner's claims are exhausted at the state court level at the very least in the sense that there is no state avenue for relief available to him due to the PCRA's one-year statute of limitations. See 42 Pa. C.S.A. § 9545(b).

However, beyond the question of exhaustion, a federal court may be precluded from reviewing habeas claims under the "procedural default doctrine." Gray v. Netherland, 518 U.S. 152, 162 (1996); Coleman v. Thompson, 501 U.S. 722, 732 (1991); Doctor, 96 F.3d at 678; Sistrunk v. Vaughn, 96 F.3d 666, 675 (3d Cir. 1996). This doctrine is applicable where, *inter alia*, a petitioner's claims are "deemed exhausted because of a state procedural bar[.]" Lines v. Larkin, 208 F.3d 153, 160 (3d Cir. 2000). Like the exhaustion requirement, the procedural default doctrine was developed to promote our dual judicial system. In turn, it is based upon the "independent and adequate state law grounds" doctrine, which dictates that federal courts will not review a state court decision involving a question of federal law if the state court decision is based on state law that is "independent" of the federal question and "adequate" to support the judgment. Coleman, 501 U.S. at 750.

The PCRA's one-year statute of limitations has been held to be an "independent and adequate" state law ground for denying federal habeas relief. Whitney v. Horn, 280 F.3d 240, 251 (3d Cir. 2002). So too has the requirement under 42 Pa. C.S.A. § 9544(b) that "an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review,

13

on appeal or in a prior state postconviction proceeding." Garcia v. Adams, No. 17-CV-5249, 2019 WL 8015127, at *6 (E.D. Pa. Aug. 27, 2019), report and recommendation adopted, 2020 WL 868200 (E.D. Pa. Feb. 20, 2020), aff'd sub nom. Garcia v. Sup't Forest SCI, No. 20-1570, 2022 WL 1153122 (3d Cir. Apr. 19, 2022) (citing cases).

Here, the following grounds for relief asserted by Petitioner are defaulted because he did not present them in his direct appeal or his PCRA appeal, as required under state law, and cannot do so now.

- Ground 2.h, that trial counsel was ineffective for failing to request an instruction on a lesser included offense, ECF No. 1 at 22;

- Ground 2.i, that trial counsel was ineffective for failing to challenge Petitioner's competency prior to trial, ECF No. 1 at 23;

- Ground 3, that the prosecution committed misconduct by failing to correct false testimony by its witnesses, id.;

- Petitioner's Miranda claim raised in his Traverse, ECF No. 30 at 6; and

- Petitioner's claim that the prosecution and his own trial counsel failed to investigate Deana Hughes adequately, raised in his Reply to his Request for Evidentiary Hearing, ECF No. 56 at 11.

Petitioner argues that his default should be set aside as to the Miranda claim based on the Supreme Court's holding in Martinez v. Ryan, 566 U.S. 1 (2012). ECF No. 30 at 9. He does not appear to apply this argument to any other defaulted claim in his briefing. See, generally, ECF Nos. 1, 30, 25, and 56. Further, Petitioner also asserts his innocence – presumably in an attempt to invoke the miscarriage of justice exception. ECF No. 30 at 9 and 11; ECF No. 56 at 5-7. Both of these arguments will be discussed below.

The United States Supreme Court has held that where a petitioner has to follow state procedure within the required time period, the "federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged

violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." <u>Coleman</u>, 501 U.S. at 750; <u>see also</u> <u>Wainwright v. Sykes</u>, 433 U.S. 72, 86-87 (1977) (failure to follow state's procedural rules results in procedural default, which bars federal review of petitioner's claims unless he can show cause and prejudice); <u>Hull v. Freeman</u>, 991 F.2d 86, 90-91 (3d Cir. 1993) (same). Petitioner argues that his PCRA counsel's failure to raise the <u>Miranda</u> claim – and presumably the prosecutorial misconduct argument – qualifies as "cause" under <u>Martinez</u>. ECF No. 56 at 6.

In <u>Martinez</u>, the United States Supreme Court created a limited equitable rule wherein ineffective assistance of post-conviction counsel can establish cause to set aside the default of "a substantial claim of ineffective assistance at trial[.]" 556 U.S. at 17. The <u>Martinez</u> exception applies only under specific circumstances where post-conviction counsel is ineffective for failing to raise such a claim on collateral review. As this Court has previously explained:

> The decision of the United States Supreme Court in <u>Martinez v. Ryan</u> created a sea change in the doctrine of procedural default, holding for the first time that a claim of ineffective assistance of post-conviction relief counsel could serve as cause to excuse the procedural default of a claim of trial counsel's ineffectiveness. However, the Supreme Court in <u>Trevino v. Thaler</u>, 133 S.Ct. 1911, 1918 (2013) explained that <u>Martinez</u> only permits a federal habeas court to find "cause" based on post conviction counsel's ineffectiveness and "thereby excus[e] a defendant's procedural default, where (1) the claim of 'ineffective assistance of trial counsel' was a 'substantial' claim; (2) the 'cause' consisted of there being 'no counsel' or only 'ineffective' counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the 'initial' review proceeding in respect to the 'ineffective-assistance-of-trial-counsel claim'; and (4) state law requires that an 'ineffective assistance of trial counsel [claim] ... be raised in an initial-review collateral proceeding."

<u>Taylor v. Pennsylvania</u>, No. 15-1532, 2018 WL 446669, at *9 (W.D. Pa. Jan. 16, 2018).

But the <u>Martinez</u> exception does not apply to claims of ineffective assistance of direct appeal counsel. <u>Davila v. Davis</u>, 582 U.S. 521, 526-27 (2017). Thus, Petitioner's argument that appellate counsel was ineffective for failing to appeal the suppression issue because of alleged <u>Miranda</u> violations cannot be saved from procedural default by <u>Martinez</u>. Additionally, <u>Martinez</u> simply does not apply to Petitioner's prosecutorial misconduct argument, or his assertion that the prosecution should have investigated Deana Hughes more thoroughly. The same is true to the extent that he directly attacks the trial court's refusal to suppress his confession.

<u>Martinez</u> theoretically, may apply to Petitioner's remaining defaulted claims at Grounds 2.h, 2.i, and his assertion that his counsel should have investigated Deana Hughes more thoroughly. However, it is Petitioner's burden under <u>Martinez</u> to establish that "the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." 566 U.S. at 14. But, Petitioner has failed to show that these claim have "some merit" – especially in light of the evidence against Petitioner, including his own confession to the murder. <u>See, e.g.</u>, <u>Buehl v. Vaughn</u>, 166 F.3d 163, 172 (3d Cir. 1999) ("It is firmly established that a court must consider the strength of the evidence in deciding whether the <u>Strickland [v. Washington</u>, 466 U.S. 668 (1984)] prejudice prong has been satisfied."). Thus, the Court can deny these claims as defaulted because it can conclude that they are not "substantial" and PCRA counsel was not ineffective for failing to litigate them before the PCRA court. Accordingly, <u>Martinez</u> does not establish cause for any of Petitioner's defaulted claims.

To the extent that Petitioner also invokes the miscarriage of justice exception, ECF No. 30 at 9 and 11; ECF No. 56 at 5-7, his argument fails for the same reason as discussed above with respect to the actual innocence exception to the statute of limitations. The United States Supreme

Court requires a petitioner to demonstrate that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup, 513 U.S. at 321 (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)). Under this standard, a petitioner must "support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." Schlup, 513 U.S at 324. Once such evidence is presented, a petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Id. at 327. But "[i]t is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." See Bousley v. United States, 523 U.S. 614, 623 (1998).

Here, as stated above, Petitioner has not asserted the existence of new, reliable evidence of his factual innocence. Therefore, the miscarriage of justice exception does not provide a basis to set aside Petitioner's default of the identified claims.

### D. Analysis of the Merits of the Remaining Claims

Where the state court has reviewed a federal issue presented to them and disposed of the issue on the merits, and that issue also is raised in a federal habeas petition, the AEDPA provides the applicable deferential standard by which the federal habeas court is to review the state court's disposition of that issue. 28 U.S.C. § 2254(d) and (e).

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court expounded upon the standard found in 28 U.S.C. § 2254(d). The Supreme Court explained that Congress intended that habeas relief for errors of law may only be granted in two situations: 1) where the state court decision was "contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States" or 2) where that state court decision "involved an

unreasonable application of[] clearly established Federal law as determined by the Supreme Court of the United States." Id. at 404-05 (emphasis deleted).

A state court decision can be contrary to clearly established federal law in one of two ways. First, the state courts could apply a wrong rule of law that is different from the rule of law required by the United States Supreme Court. Second, the state courts can apply the correct rule of law but reach an outcome that is different from a case decided by the United States Supreme Court where the facts are indistinguishable between the state court case and the United States Supreme Court case. Lambert, 387 F.3d at 234 (quoting Williams, 529 U.S. at 405-06).

In addition, the United States Court of Appeals for the Third Circuit has explained that "Circuit precedent cannot create or refine clearly established Supreme Court law, and lower federal courts 'may not canvass circuit decisions to determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to [the Supreme] Court, be accepted as correct.'" Dennis v. Sec., Pa. Dep't of Corrs., 834 F.3d 263, 368 (3d Cir. 2016) (quoting Marshall v. Rodgers, 569 U.S. 58, 64 (2013) (per curiam)). As the Supreme Court has further explained: "[s]ection 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." White v. Woodall, 572 U.S. 415, 428 (2014).

The AEDPA also permits federal habeas relief where the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

Specific factual determinations by the state court that are subsidiary to the ultimate decision to grant post-conviction relief are subject to the presumption of correctness, and must be overcome

by a petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). <u>See also</u> <u>Lambert</u>, 387 F.3d at 235-236. The Third Circuit has declined to adopt a "rigid approach to habeas review of state fact-finding." <u>Id.</u> at 236 n.19. If a state trial court and appellate court make conflicting factual findings, the habeas court must defer to the findings of the higher court – regardless of the propriety of those findings under state law – unless they are rebutted by clear and convincing evidence. <u>Rolan v. Vaughn</u>, 445 F.3d 671, 680 (3d Cir. 2006).

It is a habeas petitioner's burden to show that the state court's decision was contrary to or an unreasonable application of United States Supreme Court precedent and/or an unreasonable determination of the facts. <u>Ross v. Atty. Gen. of State of Pennsylvania</u>, No. 07-97, 2008 WL 203361, at *5 (W.D. Pa. Jan. 23, 2008). This burden means that Petitioner must point to specific case law decided by the United States Supreme Court and show how the state court decision was contrary to or an unreasonable application of such United States Supreme Court decisions. <u>Owsley v. Bowersox</u>, 234 F.3d 1055, 1057 (8th Cir. 2000) ("To obtain habeas relief, Mr. Owsley must therefore be able to point to a Supreme Court precedent that he thinks the Missouri state courts acted contrary to or unreasonably applied. We find that he has not met this burden in this appeal. Mr. Owsley's claims must be rejected because he cannot provide us with any Supreme Court opinion justifying his position."); <u>West v. Foster</u>, No. 07-CV-00021, 2010 WL 3636164, at *10 n.20 (D. Nev. Sept. 9, 2010) ("petitioner's burden under the AEDPA is to demonstrate that the decision of the Supreme Court of Nevada rejecting her claim 'was contrary to, or involved an unreasonable application of, clearly established Federal law, *as determined by the Supreme Court of the United States.*' 28 U.S.C. § 2254(d)(1) (emphasis added). Petitioner has not even begun to shoulder this burden with citation to apposite United States Supreme Court authority."), <u>aff'd</u>, 454 F. App'x 630 (9th Cir. 2011).

19

To the extent that a claim was fairly presented to the state courts but was not addressed on the merits, *de novo* review applies. Cone v. Bell, 556 U.S. 449, 472 (2009). The same review applies to a claim that resulted from a state court decision that was contrary to or an unreasonable application of United States Supreme Court precedent and/or an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(1) and (2).

### 1. Ground One

At Ground One, Petitioner asserts:

> Mr. Gambrel was denied fundamental fairness, the presumption of innocence, and due process when the state court denied relieve there the evidence failed to meet the Commonwealth's burden of proof beyond a reasonable doubt that Mr. Gambrel killed the victim and acted with malice aforethought, thus in violation of the Sixth and Fourteenth Amendments.

ECF No. 1 at 21-22. This is properly construed as a sufficiency of the evidence claim directed toward Petitioner's conviction for third degree murder.[4]

Petitioner does not provide much elaboration, if any, as to this claim in the Petition. In his Traverse, he generally asserts that the prosecution "failed to prove beyond a reasonable doubt that the Petitioner murdered the victim, with malice." ECF No. 30 at 8. He also argues that the prosecution mischaracterized expert witness testimony in its closing arguments, and that the real murderer was Deana Hughes. ECF No. 56 at 10-11.

---

[4] To the extent that Petitioner argues issues of credibility, or raises other arguments that sound in the weight of the evidence asserted against him, such a claim is not cognizable in a federal habeas petition. Tibbs v. Florida, 457 U.S. 31, 37-45 (1982) (weight of evidence claims raise questions of credibility; it is different from a claim that the evidence was insufficient to support the conviction); McKinnon v. Sup't, Great Meadow Corr. Fac., 422 F. App'x 69, 75 (2d Cir. 2011) ("the argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus[.]"); Stephenson v. Gilmore, No. 18-cv-1329, 2021 WL 3667904, at *14 (W.D. Pa. Feb. 23, 2021), report and recommendation adopted, 2021 WL 2882441 (W.D. Pa. July 9, 2021). Coates v. D.A. of Allegheny Cnty., No. 19-CV-804, 2022 WL 2251094, at *7 (W.D. Pa. May 26, 2022), report and recommendation adopted, 2022 WL 2239202 (W.D. Pa. June 22, 2022).

The clearly established federal law for analyzing a sufficiency of the evidence claim is set forth in Jackson v. Virginia, where the United States Supreme Court held that "in a challenge to a state conviction brought under 28 U.S.C. § 2254 . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." 443 U.S. 307, 324 (1979). In a federal habeas corpus proceeding where the sufficiency of the evidence is in contention:

> [T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction ... does not require a court to ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.... Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Id. at 318-19 (internal citations omitted) (emphasis in original). See also Robertson v. Klem, 580 F.3d 159, 165 (3d Cir. 2009); Orban v. Vaughn, 123 F.3d 727, 731-33 (3d Cir. 1997).

In applying the Jackson standard, the reviewing court must consider each substantive element of the criminal offense at issue as defined under state law. Coleman v. Jackson, 566 U.S. 650, 655 (2012); Jackson, 443 U.S. at 324, n.16. "While the elements of a criminal conviction are to be defined by state law, a reviewing court's determination of whether sufficient evidence was produced to satisfy each element is governed by federal law." Vaughter v. Fisher, No. 12-CV-493, 2014 WL 1152540, at *15 (E.D. Pa. Mar. 24, 2014) (citing Coleman, 566 U.S. at 655). The Jackson standard is "deferential[,]" and "leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors draw reasonable inferences from basic facts to ultimate facts." Coleman, 566 U.S. at 655.

The United States Court of Appeals for the Third Circuit has found that the Pennsylvania state law test for challenges to the sufficiency of the evidence is identical to the federal standard set forth in Jackson. See Evans v. Court of Common Pleas, Delaware Cnty., 959 F.2d 1227, 1233

(3d Cir. 1992) ("the formulation of the Pennsylvania test for insufficiency of the evidence is almost identical to that under federal law").

The prosecution is required to prove the following elements beyond a reasonable doubt in order to support a conviction of third degree murder under Pennsylvania law:

> (1) that the defendant killed another person; and

> (2) that the defendant killed with malice aforethought.

Gambrel, 2019 WL 2526157, at *2 (citing Com. v. Fisher, 80 A.3d 1186, 1191 (Pa. 2013)).

> [T]o convict a defendant of the offense of third[ ]degree murder, the Commonwealth need only prove that the defendant killed another person with malice aforethought. This Court has long held that malice comprehends not only a particular ill-will, but ... [also a] wickedness of disposition, hardness of heart, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured.

Fisher, 80 A.3d at 1191 (internal quote and citation omitted).

That said, the specific intent to kill is not required to establish the *mens rea* for third degree murder under Pennsylvania law. "[E]vidence of intent to kill is simply irrelevant to third degree murder. The elements of third degree murder absolutely include an intentional *act,* but not an act defined by the statute as intentional murder. The act sufficient for third degree is still a purposeful one, committed with malice, which results in death[.]" Id. (emphasis in original). "[M]alice may be inferred from the use of a deadly weapon on a vital part of the body." Com. v. Seibert, 622 A.2d 361, 364 (Pa. Super. Ct. 1993) (internal citations omitted).

In the instant case, the Superior Court addressed Petitioner's sufficiency of the evidence claim on direct appeal as follows.

> First, the Commonwealth presented more than enough evidence to prove that Gambrel killed the victim. Gambrel admitted in his confession that he shot the victim, and the forensic pathologist testified that the victim died from a gunshot wound to the head. *See* N.T., Trial, 7/11/18, at 37, 44; *see also* Commonwealth's Ex. B

(Transcription of Gambrel's Interview) at 47. Additionally, this evidence is supported by testimony from Hughes, who was present when the victim was shot in the head. *See* N.T., Trial, 7/10/18, at

121. Collectively, this evidence was sufficient to satisfy the first element of third-degree murder, that Gambrel killed the victim.

Next, Gambrel claims that there was insufficient evidence to support a finding of malice. He maintains that text messages between the victim and Gambrel show "that the victim and [Gambrel] were 'fine' in the time period after the message was sent and received, and the time of the shooting." Gambrel's Br. at 9 (citing to N.T., 7/10/18, at 181). We are unpersuaded.

Here, the evidence was sufficient to support an inference of malice because Gambrel used a deadly weapon on a vital part of the victim's body. *See Seibert*, 622 A.2d at 364; *see also Commonwealth v. Johnson*, 42 A.3d 1017, 1026 (Pa. 2012) (stating injuries to vital parts of victim's body included head and chest). Additionally, viewing the evidence in the light most favorable to the Commonwealth, Gambrel's actions were reckless. Prior to shooting the victim in the head, the victim asked Gambrel, "[R]eally, are you going to point that gun at me?" N.T., 7/10/18, at 120. In response, Gambrel said "yes" and then proceeded to shoot the victim in the head. *Id.* Thus, Gambrel's own statements express his reckless behavior in killing the victim.

Viewing the evidence in the light most favorable to the Commonwealth, the victim tried to end his friendship with Gambrel in a text that read, "I think it best to end the friendship. Too much shit going on with you. Sorry, don't know what else to do." N.T., Trial, 7/13/18, at 92. Hughes testified that Gambrel and the victim's friendship was okay after this message. N.T., 7/10/18, at 181. The jury could disbelieve Hughes' testimony. Even if the jury believed her testimony, this evidence all relates to a possible motive for the killing and even in absence of any evidence of motive, the evidence of malice was sufficient. Nonetheless, evidence that the victim and Gambrel were "fine" prior to the shooting does not negate the Commonwealth's evidence of malice. *See Seibert*, 622 A.2d at 366 (concluding that evidence of defendant's friendship with victim "does not prove that Seibert's recklessness did not reach to the level of malice" sufficient to prove third-degree murder). The evidence was sufficient to prove malice. Thus, Gambrel's sufficiency claims fail.

Gambrel, 2019 WL 2526157, at *2-3.

Here, after a thorough review of the record before this Court, the undersigned cannot conclude that the Superior Court's decision was contrary to, or an unreasonable application of the Jackson standard, or was based on an unreasonable determination of the facts. Instead, the Superior Court applied the evidence in the case to the elements of third degree murder, and properly concluded under the Pennsylvania equivalent of the Jackson standard that it was sufficient to support Petitioner's conviction.

For the foregoing reasons, the request for federal habeas relief based on Ground One should be denied.

### 2. Ground Two

At Ground Two, Petitioner asserts multiple bases for federal habeas relief grounded in the alleged ineffective assistance of counsel.

> Trial counsel rendered ineffective assistance pursuant to the Strickland standard and the Sixth Amendment:
>
> a) Failure to develop argument at trial of fabricated statement by Mr. Gambrel based upon his belief he had cancer.
>
> b) Failure to object to hearsay statements made by Christina Rohaley.
>
> c) Failure to appeal the court's denial of objection that various photographs were more prejudicial than probative.
>
> d) Failure to appeal court's denial of suppression of statement to Corporal Thomas Ulintz.
>
> e) Failure to appeal court's ruling defense could not publish certain photos of the basement of residence where shooting occurred.
>
> f) Causing Mr. Gambrel to admit to jury that he was confined in Fayette County Prison, thus, Sixth Amendment violation.
>
> g) Failure to appeal court's denial that District Attorney's questioning of two shot guns of Mr. Gambrel found at his residence constitutes facts not evidence.
>
> h) Failure to request instruction on lesser-included offense.
>
> i) Failure to challenge the competency of Mr. Gambrel prior to trial.

24

ECF No. 1 at 22-23. As stated above at Part II.C.2, Grounds 2.h and 2.i are procedurally defaulted, and their merits will not be addressed.

The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." Lockhart v. Fretwell, 506 U.S. 364, 368 (1993) (quoting Strickland, 466 U.S. at 684). The Supreme Court has formulated a two-part test for determining whether counsel rendered constitutionally ineffective assistance: (1) counsel's performance was unreasonable; and (2) counsel's unreasonable performance actually prejudiced the defense. Strickland, 466 U.S. at 687. To determine whether counsel performed below the level expected from a reasonably competent attorney, it is necessary to judge counsel's challenged conduct on the facts of the particular case, viewed at the time of counsel's conduct. Id. at 690.

The first prong of the Strickland test requires a petitioner to establish that his or her attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Id. at 688. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the totality of the circumstances, the challenged action "might be considered sound trial strategy." Id. at 689. The question is not whether the defense was free from errors of judgment, but whether counsel exercised the customary skill and knowledge that normally prevailed at the time and place. Id. Instead, Petitioner is required to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Harrington v. Richter, 562 U.S. 86, 104 (2001) (quoting Strickland, 466 U.S. at 687).

The second prong of <u>Strickland</u> requires a petitioner to demonstrate that counsel's errors deprived him of a fair trial, and the result was unfair or unreliable.  <u>Strickland</u>, 466 U.S. at 689. To prove prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  <u>Id.</u> at 694. A "reasonable probability" is one that is sufficient to undermine confidence in the outcome.  <u>Id.</u>

In considering a claim of ineffectiveness of counsel, Pennsylvania uses a three-part ineffectiveness test.

> To plead and prove ineffective assistance of counsel a petitioner must establish: "(1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act." <u>Commonwealth v. Stewart</u>, 84 A.3d 701, 706 (Pa. Super. 2013) (*en banc*).  The failure to meet any of these aspects of the ineffectiveness test results in the claim failing. <u>Id.</u>

<u>Future v. Ferguson</u>, No. 16-2346, 2022 WL 2307095, at *8 (M.D. Pa. June 27, 2022), <u>certificate of appealability denied sub nom</u>. <u>Future v. Sup't Benner Twp. SCI</u>, No. 22-2419, 2022 WL 18536146, at *1 (3d Cir. Dec. 6, 2022).  The United States Court of Appeals for the Third Circuit has found this test not to be contrary to <u>Strickland</u>.  <u>Werts v. Vaughn</u>, 228 F.3d 178, 204 (3d Cir. 2000).

In the instant case, the Superior Court applied Pennsylvania's three-part test to Petitioner's exhausted claims of ineffective assistance of counsel.  <u>Gambrel</u>, 2022 WL 2952334, at *3. Accordingly, the Superior Court's analysis was not contrary to <u>Strickland</u>.

The specifics of each of Petitioner's exhausted ineffective assistance of counsel claims under Ground Two will be addressed *seriatim*.

a. **Ground 2.a: trial counsel's alleged ineffectiveness for failing to develop arguments that Petitioner had fabricated statements to police because he believed that he had cancer.**

The Superior Court addressed this claim in its opinion affirming the denial of PCRA relief

as follows.

> Appellant first argues that Attorney Aubele was ineffective for failing to develop the argument that Appellant fabricated his police confession to protect Hughes—who he claimed to be the real shooter—from prosecution because he believed at the time that he had cancer and did not have long to live. While Appellant acknowledges that Attorney Aubele mentioned the cancer diagnosis during trial, Appellant contends that his trial counsel was ineffective by "fail[ing] to repeatedly set forth this claim during the trial." Appellant's Brief at 14. Appellant asserts that there was no reasonable basis for counsel's decision to raise the issue repeatedly throughout the course of the trial and that this failure prejudiced him as it was the central claim of his defense.
>
> The PCRA court determined that this claim lacked arguable merit because Attorney Aubele did in fact raise this issue during his examination of Appellant and in his closing. PCRA Court Opinion, 1/5/21, at 4. The record supports the PCRA court's conclusion. As Attorney Aubele explained at the PCRA hearing:
>
>> [O]ne of our defense strategies was that he had thought he was dying, he was much older than [Hughes] and that [ ] his thinking was that he was going to cover for her in order to give her an opportunity to live the rest of her life because he thought that his was short lived.
>
> N.T., 9/30/20, at 11.
>
> After jury selection, Attorney Aubele made a motion *in limine* to allow Appellant to testify regarding his belief that he had cancer—in spite of the fact that he had never been diagnosed or treated for cancer—to further the defense that his confession was false and intended to protect Hughes. N.T., 7/9/18, at 17. Attorney Aubele agreed not to raise the issue until Appellant's testimony. *Id.* The trial court permitted the testimony but also ruled that the Commonwealth could call rebuttal witnesses, including the doctor who treated him while he was detained prior to trial, to rebut that Appellant ever had cancer.[8] *Id.* at 17-20.

During the testimony of Trooper Richard Sizer, an audio tape of Appellant's statement to police was played to the jury, wherein Appellant stated that he had an appointment later on the day that Victim was shot at the "cancer center" to check out "some masses in my lungs." N.T., 7/13/18, at 12; Transcript of Police Interview, 7/18/17, at 61.[9] On direct examination, Attorney Aubele inquired as to Appellant's cancer screening scheduled for the day of Victim's death. N.T., 7/13/18, at 74-75. Appellant testified that his "false confession" to killing Victim was a result of a "medical issue that [he] felt [he] might have" and the fact that he was almost 30-years older than Hughes and he had less to live for. *Id.* at 78-79. Furthermore, in closing arguments, Attorney Aubele stressed that Appellant initially confessed to shooting Victim because "[h]e thought he had cancer, and he wanted to protect" Hughes. N.T., 7/16/18 (Closing Arguments), at 12. The record thus reflects that Attorney Aubele adequately introduced evidence of Appellant's belief that he had cancer and incorporated it into Appellant's defense at trial.

[8] Although Appellant testified at trial regarding his belief that he had cancer at the time of Victim's death, the Commonwealth did not call any rebuttal witnesses.

[9] The transcript of the audio recording of Appellant's statement, which was played at trial and had been previously transcribed, was incorporated as an exhibit to the Notes of Testimony for the July 13, 2018 trial proceedings. *See* N.T., 7/13/18, at 13, Stenographer's Exhibit 1.

Id. at *3-4 and nn. 8 and 9.

This Court interprets the Superior Court's holding as finding that trial counsel did not perform deficiently because he did, in fact, advance Petitioner's argument that he fabricated his confession because he believed that he had cancer. A review of the available record, as cited by the Superior Court, supports the conclusion that its decision was not contrary to or an unreasonable application of Strickland, nor based on an unreasonable determination of the facts. Accordingly, Ground 2.a should be denied.

### b. Ground 2.b: trial counsel's alleged ineffectiveness for failing to object to hearsay statements by Christina Rohaley.

Petitioner asserts that trial counsel was ineffective for failing to object to a hearsay statement made by a prosecution witness at trial. ECF No. 1 at 22. Petitioner does not elaborate much on the claim in his briefing before this Court, but the Superior Court characterized the issue in his PCRA proceeding as follows.

> Appellant next argues that Attorney Aubele was ineffective for failing to object to hearsay statements by Christina Rohaley, Hughes's cousin. Rohaley was present at her mother's house on July 18, 2018 when Hughes arrived from being dropped off by Appellant. N.T., 7/9/18, at 57-58. On direct examination by the Commonwealth, Rohaley testified that Hughes "said that [Appellant] shot [Victim]." *Id.* at 61. Rohaley then read her written statement to the police into the record, in which she reported that:

>> [Hughes] said that [Victim] was getting ready to roll a cigarette and [Appellant] walked outside to his van, came back in with a gun and pointed it at [Victim]. [Victim] said, "Are you really going to point a gun at me?" [Appellant] said, "Yes," and pulled the trigger and shot him in the head. She said that he put his body into a box and cleaned up the mess and took his body to his workshop.

> *Id.* at 64. Attorney Aubele did not object to this testimony and instead asked several questions to clarify that the written statement accurately reflected what Hughes told Rohaley on the date that Victim was shot. *Id.* at 64-67.

> Appellant asserts that no hearsay exception exists that would have permitted Rohaley's testimony and therefore a hearsay objection would have been sustained. Appellant argues that Rohaley's testimony was prejudicial because she was able to identify him as Victim's killer even though she was not present at the time of the shooting.

> When asked about his rationale for not objecting to Rohaley's testimony at the PCRA hearing, Attorney Aubele testified that:

>> [P]art of our defense strategy was that Deana Hughes was the shooter and what Christina Rohaley was testifying to might have been hearsay but it was

29

completely different than what Deana Hughes ended up admitting to doing and what role she actually had in this.

N.T., 9/30/20, at 12. Attorney Aubele explained that while Hughes told her family that Gambrel did all of the cleaning of the blood after the shooting and put the body in a box by himself, Hughes's account to the police and her testimony at the preliminary hearing later changed to her participating in the clean-up, assisting putting the body in the box, and going with Appellant to his shop after the shooting. *Id.* at 12, 25-26. Attorney Aubele asserted that Hughes's inconsistent accounts undermined the credibility of her identification of Appellant as the shooter at trial. *Id.*

We conclude that Attorney Aubele's decision to not object to Rohaley's hearsay testimony was reasonably based upon his trial strategy to attack the credibility of Hughes's testimony that Appellant shot Victim. Hughes testified that, after the shooting, she assisted in cleaning the Victim's blood, went with Appellant to the workshop he used for his contractor business to get a box, and helped in placing the box containing Victim's body into Appellant's van. N.T., 7/10/18, at 127-34. Attorney Aubele extensively cross-examined Hughes regarding the inconsistencies in her various accounts of the events following the shooting of Victim, showing that she had recounted the events differently at the preliminary hearing and to the police. *Id.* at 161-94. Furthermore, Attorney Aubele vigorously attacked Hughes's credibility in his closing argument, asserting that her recollection of the events of the shooting "drastically changed" between her accounts to her family, to the police, at the preliminary hearing, and then at trial. N.T., 7/16/18 (Closing Arguments), at 5-9. Attorney Aubele's decision to allow Rohaley to describe what Hughes told her about the shooting thus added one more inconsistent statement by which he could attack her credibility. Accordingly, Appellant is due no relief on this issue.

Gambrel, 2022 WL 2952334, at *4-5 (footnote deleted).[5]

---

[5] The Superior Court agreed with Petitioner that Rohaley's statement was hearsay, and not admissible as a prior inconsistent statement. Id. at *5 n.10.

The undersigned interprets the Superior Court's decision as a finding that trial counsel's performance was not deficient because it was in accordance with a reasonable strategy. After a review of the record, this Court concludes that Petitioner has failed to meet his burden to show that this conclusion was contrary to, or an unreasonable application of Strickland, or an unreasonable determination of facts. Cf. Willgin v. Smith, 539 U.S. 510, 522 (2003) ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[]"). Therefore, Ground 2.b should be denied.

> **c. Ground 2.c: counsel's alleged ineffectiveness for failing to appeal the trial court's denial of an objection that various photographs were more prejudicial than probative.**

Petitioner does not provide substantial argument as to this claim in his filings. For their part, Respondents explain that the photographs at issue were of the victim's body, and argue that they were probative because they were necessary to establish the crime of abuse of a corpse – of which Petitioner was convicted by the jury. ECF No. 22 at 13. The Superior Court set for the facts underlying this issue as follows.

> Appellant contends that Attorney Aubele was ineffective for failing to appeal the denial of his objection related to two photographs of Victim's corpse that were shown at trial. Appellant argues that he requested that counsel raise the issue on appeal and that the issue has merit because the photographs were more prejudicial than probative. Appellant asserts that Attorney Aubele's explanation for failing to raise the issue—that he had bargained with the Commonwealth to only admit two photographs—was not reasonable as Attorney Aubele should not have agreed to the admission of any photographs when Appellant was against their entrance.
>
> During the testimony of Trooper Charles Smolleck, the Commonwealth admitted various photographs of the scene where Victim's body was found, including two of Victim's body. N.T., 7/9/18, at 95; Commonwealth Exhibit 19, 20. According to the trial court, the two photographs were identical, except the second was a blown-up version of the first. N.T., 7/9/18, at 94-95. At the time of the admittance of these photographs, Attorney Aubele noted his

objection that had been made previously off the record. *Id.* at 95. The trial court instructed the jury that the photographs were graphic and only should be considered in the context of the abuse of a corpse charge and should not affect the jury's consideration of any other issue. *Id.* at 90. The trial court noted on the record after the jury retired that it allowed the one photograph (in two different versions) into the record over an objection because it was clearly relevant to the abuse of a corpse charge, but the court excluded a second photograph as cumulative and prejudicial. *Id.* at 102-03. In addition, the trial court explained that it would often prefer to admit photographs of a corpse in black and white, but the court felt that, upon viewing the photographs, black and white was inadequate to show the way the body was placed in the box. *Id.*

At the PCRA hearing, Attorney Aubele testified that he objected to the admission of the exhibits and that he also came to an agreement with the Commonwealth to admit the admission of two non-color photographs. N.T., 9/30/20, at 13, 19, 26. In light of the clear relevance of these photographs to prove that Appellant committed the abuse of a corpse offense, Attorney Aubele felt that there would be no merit to an appeal of the issue. *Id.* The PCRA court found that, in light of Attorney Aubele's agreement to only admit two black-and-white photographs and their clear relevance, the issue would not have been found meritorious on direct appeal. PCRA Court Opinion, 1/5/21, at 5.

We note that there is some discrepancy between Attorney Aubele's recollection at the PCRA hearing and the events at trial, as it appears that the photographs that were admitted were in color, not black and white.

Gambrel, 2022 WL 2952334, at *6-7.

The Superior Court went on to acknowledge that it did not have copies of the photos in the record before it. Id. at *7. However, in spite of this, it went on to find that the photographs were relevant and admissible;

Photographs of dead bodies "by their very nature can be unpleasant, disturbing, and even brutal." *Commonwealth v. Johnson*, 42 A.3d 1017, 1033 (Pa. 2012) (citation omitted). However, "the mere depiction of blood" in a photograph is not by itself inflammatory. *Commonwealth v. Spell*, 28 A.3d 1274, 1279 (Pa. 2011). Moreover, photographs that show the condition and location of the victim's body when discovered are relevant to an abuse of a corpse charge. *Id.* at 1280; *Commonwealth v. Hutchison*, 164 A.3d 494, 502 (Pa.

32

Super. 2017); *see also* 18 Pa.C.S. § 5510 (abuse of a corpse is shown where the defendant "treats a corpse in a way that he knows would outrage ordinary family sensibilities").

Nothing in the record here indicates that the photographs of Victim that were shown to the jury in this case were inflammatory. While the trial court allowed two photographs to be admitted, they were the same photograph with the second being a zoomed-in version of the first; the trial court ruled that the admission of a second unique photograph would have little additional probative value and be unnecessarily prejudicial. N.T., 7/9/18, at 94-95, 102-03. The photographs depicted the manner in which Appellant placed the body inside of a cardboard box and were thus clearly relevant to the

jury's determination of whether he committed abuse of a corpse. *Id.*; *Spell*, 28 A.3d at 1280; *Hutchison*, 164 A.3d at 502.

The trial court also explained that while it would often prefer black-and-white photographs, in this case "the mechanism of putting the body in the box would not be visible in black and white because the blood would fade into the green [of the interior of the box] and not be as visible." N.T., 7/9/18, at 102-03. Furthermore, the trial court reduced any prejudice caused by the photographs by instructing the jurors of the limited reason for their admission and cautioning them not to be emotionally swayed when viewing the photographs. *Id.* at 90; *Spell*, 28 A.3d at 1280. In light of the lack of any showing that the photographs were inflammatory and their clear relevance, we conclude that Appellant has not proved that any appeal related to this issue would be found meritorious. *See Spell*, 28 A.3d at 1279-80 (two color photographs of blood-covered body found in parking lot were not inflammatory and were relevant to show defendant committed abuse of a corpse); *Hutchison*, 164 A.3d at 501-02 (four color photographs depicting various parts of victim's decomposing body were not inflammatory and were relevant to show abuse of corpse).

Id. at *7-8.

Thus, the Superior Court found that Petitioner's claim had no merit.  Id. at *7.  The

undersigned interprets this as a determination that counsel did not perform deficiently for failing

to appeal an issue that lacked merit.

Like the Superior Court, this Court also lacks the exhibits at issue. However, on October 28, 2024, Respondents submitted four photographs from the prosecution's file. One of those photographs is marked with a handwritten numeral 19, and depicts an image consistent with the description above of Commonwealth Exhibit 19 admitted at trial, and which provides the basis for this claim. These photographs were lodged with the paper state court record in the possession of this Court.

After review of the record – including, but not limited to, the testimony surrounding the admission of the photographs, ECF No. 22-5 at 91-104 – it is clear that Petitioner has not met his burden to show that the Superior Court's decision was contrary to, or an unreasonable application of <u>Strickland</u>, or an unreasonable determination of the facts. The same is true even considering the photographs from the prosecution's file in the paper state court record.

Indeed, an attorney does not provide ineffective assistance by failing to raise meritless objections or file meritless motions. <u>United States v. Sanders</u>, 165 F.3d 248, 253 (3d Cir. 1999). Further, this Court is bound by the Superior Court's determination that the photos were admissible under Pennsylvania law. <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). Because the photographs at issue were admissible, Petitioner's attorney did not perform deficiently in failing to appeal their admission. Accordingly, Petitioner's claim at Ground 2.c should be denied.

### d. Ground 2.d: counsel's alleged ineffectiveness for failing to appeal the trial court's refusal to suppress Petitioner's statement to Corporal Thomas Ulintz.

The Superior Court characterized the facts underlying this claim as follows.

> Appellant argues that Attorney Aubele was ineffective for failing to appeal the denial of the motion to suppress Appellant's statement to Corporal Thomas Ulintz of the Pennsylvania State Police that

"[n]obody [was present in the garage of his workshop] that is alive at least." N.T., 7/10/18, at 47. Appellant made this statement upon being detained by Corporal Ulintz outside of the garage and patted down for weapons; Corporal Ulintz asked Appellant "if anything was in there" in reference to Appellant's right pocket, and Appellant responded "nobody that is alive at least." *Id.* at 45-47. Corporal Ulintz then asked him to clarify his statement and Appellant said, "I thought you were talking about inside the garage, not inside my pocket." *Id.* at 47-48. Corporal Ulintz did not further inquire as to who might be inside the garage. *Id.* at 48.

Appellant argues that the statement "nobody [is in the garage] that is alive at least" was hearsay and that no exception applied to permit its admission. Appellant contends that Attorney Aubele demonstrated no reasonable basis at the PCRA hearing for his failure to appeal from the denial of suppression and that counsel recognized the prejudicial value of the statement as showing a

"callous or careless ... disregard for the condition of" Victim's body. N.T., 9/30/20, at 14.

Gambrel, 2022 WL 2952334, at *6.

As the Superior Court recognized, the argument that Petitioner raised in his PCRA appeal was the Petitioner's underlying statement to Ulintz was inadmissible hearsay. Br. for Appellant, Com. v. Gambrel, No. 719 WDA 2021, 2021 WL 6933047, at *20-21 (Pa. Super. Ct. filed Sept. 8, 2021).

The Superior Court found that "there is little prejudice to the admission of Appellant's statement" to Corporal Ulintz. Gambrel, 2022 WL 2952334, at *6. However, that court ultimately determined that Petitioner's argument failed because the underlying suppression motion was not based on hearsay – and instead was based on an alleged violation of Petitioner's right against self-incrimination. Id. See also ECF No. 22-2 at 3 and ECF No. 22-3 at 5-6. Therefore, appellate counsel's failure to appeal on the basis of hearsay lacked merit because that argument would have been waived. Gambrel, 2022 WL 2952334, at *6. Additionally, the Superior Court held that the statement was admissible under Pennsylvania state law under the exception to the rule against

hearsay as an admission by an opposing party, and that any argument that counsel should have objected to its admission at trial was without merit. Id. (citing Pa. R.E. 803(25)(A)).

Regardless of which of these bases Petitioner wishes to raise to support this claim, this Court interprets the Superior Court's holding as a finding that Petitioner had failed to establish counsel's deficient performance. Petitioner has failed to show that this finding was contrary to, or an unreasonable application of Strickland, or was based on an unreasonable determination of the facts. Moreover, as stated above, an attorney does not provide ineffective assistance by failing to raise meritless objections or file meritless motions. Sanders, 165 F.3d at 253. Further, this Court is bound by the Superior Court's determination that Petitioner's statement to Corporal Ulintz was admissible under Pennsylvania law. Cf. Bradshaw, 546 U.S. at 76.

Petitioner's counsel cannot perform deficiently for failing to challenge an admissible statement. Accordingly, Petitioner's claim at Ground 2.d should be denied.

> **e. Ground 2.e: counsel's alleged ineffectiveness for failing to appeal the trial court's refusal to publish certain photos of the basement of the residence where shooting occurred.**

This Court once again turns to the Superior Court's opinion denying PCRA relief for the context underlying this ground.

> At trial, the Commonwealth introduced and published to the jury eight photographs of the basement area of the house taken by Trooper Charles Morrison, the forensic investigator who took the photographs; the photographs were admitted in part to show that no firearms or ammunition were discovered in the house. N.T., 7/11/18 (Morning Session), at 63-72; Commonwealth Exhibits 82-89. On cross-examination, Attorney Aubele showed Trooper Morrison three additional photographs that he took of the basement area, which showed two boxes of what appeared to be shotgun shells. N.T., 7/11/18 (Morning Session), at 77-80; Defense Exhibits D-F. Trooper Morrison agreed that the photographs were consistent with boxes of Remington and Winchester ammunition. N.T., 7/11/18 (Morning Session), at 80. After a recess and further discussion, the Commonwealth stipulated that the photographs showed two boxes of Remington and Winchester shotgun shells. N.T., 7/11/18

36

(Afternoon Session), at 6. The trial court admitted the photographs into the record but refused Attorney Aubele's request to publish them as Victim was shot with a .22 caliber rifle and therefore the shotgun shells only had impeachment value. *Id.* at 3-7.

Gambrel, 2022 WL 2952334, at *8.

The Superior Court noted that, during the PCRA hearing, Petitioner's trial counsel testified that these photos were requested and viewed by the jury during deliberations.  PCRA Hr'g Tr. dated Sept. 30, 2020, at 15-16, ECF No. 22-21 at 16-17.  However, questions from the jury were not preserved by the trial court, and the Superior Court was not able to determine whether the record supported that testimony.  Gambrel, 2022 WL 2952334, at *9.

Be that as it may, the Superior Court went on to explain that the trial court had discretion not to publish the photos at issue to the jury.

> Nevertheless, we agree with the trial court's explanation at trial as to why publication of the photographs was not proper, and therefore we find that there would have been no arguable merit to an appellate claim raising the issue. As the trial court explained, the shotgun shells present in the basement were admissible for purposes of argument and as impeachment evidence to show that Trooper Morrison's representation that no guns or ammunition were found in the residence was inaccurate. N.T., 7/11/18 (Morning Session), at 80; N.T., 7/11/18 (Afternoon Session), at 4-7. However, the photographs of the shotgun shells were not relevant to the issue of whether the murder weapon—a rifle that fired .22 caliber bullets rather than shotgun shells—was inside the house or it needed to be retrieved from a vehicle outside. N.T., 7/11/18 (Afternoon Session), at 4-7. Therefore, the photographs of the shotgun shells were of limited value to assist the jurors in "understand[ing] testimony as they hear it" and the trial court did not abuse its discretion in prohibiting the publication of the photographs. *Id.* at 7; *cf. Commonwealth v. Ali*, 112 A.3d 1210, 1218 (Pa. Super. 2015), *vacated on other grounds*, 149 A.3d 29 (Pa. 2016) (finding no abuse of discretion with trial court's decision to not publish false laboratory report relied upon by defendant when selling controlled substance based upon "danger that the jury might skew or place undue emphasis upon the contents of the report").

Id.

37

Once again, this Court interprets the Superior Court's decision as a finding that Petitioner had failed to establish counsel's deficient performance. Petitioner has failed to show that this finding was contrary to, or an unreasonable application of Strickland, or was based on an unreasonable determination of the facts. An attorney does not provide ineffective assistance by failing to raise meritless objections or file meritless motions. Sanders, 165 F.3d at 253. And this Court is bound by the Superior Court's determination that the trial court had discretion not to publish the phots under Pennsylvania law. Cf. Bradshaw, 546 U.S. at 76.

Petitioner's counsel does not perform deficiently for failing to file a meritless appeal. Accordingly, Petitioner's claim at Ground 2.e should be denied.

### f. Ground 2.f: trial counsel's alleged ineffectiveness for causing Mr. Gambrel to admit to the jury that he was confined in Fayette County Prison.

The Pennsylvania Superior Court provides the factual background for this claim in its opinion affirming the denial of PCRA relief.

> Appellant argues that Attorney Aubele was ineffective for eliciting testimony from Appellant that he was incarcerated in the Fayette County Prison at the time of trial. Appellant contends that the "repeated references to [his] incarceration constituted a constant reminder for the jury that Appellant was" incarcerated and that this decision by counsel "created a negative image of his client in the minds of the jury." Appellant's Brief at 29-30.
>
> On direct examination, Appellant stated that he was residing at Fayette County Prison and he had been there for 11 and ½ months at the time of his testimony. N.T., 7/13/18, at 50. Attorney Aubele also asked Appellant whether he was being treated for cancer in jail, to which Appellant responded in the negative. *Id.* at 75. Attorney Aubele explained his rationale for these questions at the PCRA hearing:
>
>> [I]t was part of the trial strategy that [Appellant] was taking the blame for something that he did not do and that he had been placed in the prison where he didn't have access to drugs and where he didn't have access to medical treatment and he had changed his mind, that he did not want to take the fall for something that

38

> he didn't do. Also at that point in time he had been in prison for approximately a year and [ ] we also argued that [Hughes] was going to be receiving probation for her role [in Victim's killing]. Even if [Appellant] was acquitted he was going to do more time than her.

N.T., 9/30/20, at 17; *see also id.* at 24, 27.

> The PCRA court determined that this issue was meritless because "the fact that [Appellant] had been housed in the Fayette County Prison had already been mentioned many times during the trial as part of [Attorney Aubele's] strategy." PCRA Court Opinion, 1/5/21, at 6. It is unclear what earlier references to Appellant's incarceration to which the PCRA court refers. However, we conclude that Appellant is not entitled to relief on this claim on the alternate basis that Attorney Aubele's questioning formed a part of his reasonable trial strategy to persuade the jury that Appellant took responsibility for Hughes' crime and Appellant had already been punished far more than Hughes ever would. Attorney Aubele cross-examined Hughes to this effect, asking whether she took advantage of Appellant by having him provide her with drugs and other favors and whether she took "advantage of him when [she] allowed him to take the rap for" her. N.T., 7/10/18, at 194. Attorney Aubele emphasized during closing arguments that Hughes was "free" at the time of trial and "the most punishment [that] she is going to receive for her involvement in this incident is probation[, while Appellant] has been incarcerated for nearly a year." N.T., 7/16/18 (Closing Arguments), at 14.

Gambrel, 2022 WL 2952334, at *10-11.

The Superior Court determined that trial counsel's performance was based on a reasonable strategy, and was not deficient.

> Here, Attorney Aubele's references to Appellant's incarceration was in accordance with the standards set forth by our Supreme Court as it was clear that Appellant was being detained for the purpose of trial and Attorney Aubele raised the issue only as part of his strategy to gain sympathy for Appellant and to highlight the fact that Hughes would never serve time. Moreover, Attorney Aubele did not go so far as to have Appellant dressed in prisoner's clothing for trial, which would unnecessarily portray Appellant in a negative light. *See* N.T., 9/30/20, at 24 ("Well I certainly didn't want him dressed in [prison clothing] for trial ..."). As Attorney Aubele had a reasonable basis

for raising the issue of Appellant's pre-trial detention, we conclude
that Appellant is not entitled to relief on his final appellate issue.

Id. at *11.

After reviewing the record, the undersigned concludes that Petitioner has not met his

burden to show that the Superior Court's decision was contrary to, or an unreasonable application

of the Strickland standard, or was based on an unreasonable determination of the facts. Petitioner

has not refuted the Superior Court's characterization of the evidence, including the closing

arguments. Further, as recognized by the Supreme Court in Strickland, "[j]udicial scrutiny of

counsel's performance must be highly deferential. 466 U.S. at 689. Indeed, "strategic choices

made after thorough investigation of law and facts relevant to plausible options are virtually

unchallengeable[]" Willgin, 539 U.S. at 522. As such, this claim should be denied.

### g. Ground 2.g: counsel's alleged ineffectiveness for failing to appeal the trial court's denial of his objection regarding Petitioner's possession of two shotguns.

The Superior Court set forth the facts underlying this claim as follows.

> Appellant asserts that Attorney Aubele was ineffective for failing to
> appeal the denial of his objection to the district attorney's
> questioning of Appellant regarding his possession of two shotguns
> in his home on the grounds that the question assumed facts not in
> evidence. Appellant argues that this line of questioning "confus[ed]
> the jury and divert[ed] their attention from the facts of the case."
> Appellant's Brief at 28. Appellant further asserts that Attorney
> Aubele's representations at the PCRA hearing that the testimony
> regarding the shotguns was a "nonissue" did not constitute a
> reasonable basis for not raising the issue on direct appeal. N.T.,
> 9/30/20, at 18.
>
> The following exchange took place during cross-examination of
> Appellant:
>
>> Q. And, you told the police you didn't ever own a
>> gun, didn't you?
>>
>> A. Not that I had never owned a gun, no.

40

Q. You didn't have any guns at the time this happened?

A. No.

Q. Did you have a shotgun?

A. I didn't.

Q. You didn't?

A. No.

Q. Never?

A. No.

Q. Over your home on...

A. There are two shotguns there.

Q. There are two shotguns over there, isn't there?

A. Yes.

N.T., 7/13/18, at 97. Attorney Aubele then objected, but the trial court overruled the objection on the basis of a potentially prior inconsistent statement to police that he did not own a gun. *Id.* at 97-98. A short recess was taken directly after the trial court's ruling, and Appellant's possession of shotguns was not revisited at trial.

Gambrel, 2022 WL 2952334, at *9-10.

The Superior Court determined that Petitioner did not demonstrate that counsel's performance was deficient, and did not show prejudice due to counsel's failure to appeal this issue.

The record here supports the PCRA court's conclusion that Appellant first mentioned that he had "two shotguns" and that Attorney Aubele's objection was only based upon the district attorney's repetition of this assertion. N.T., 7/13/18, at 97. Furthermore, the Commonwealth was entitled to probe Appellant's credibility and the question of whether he had access to weapons on cross-examination. Therefore, even if Attorney Aubele had appealed from the denial of his objection on direct appeal, it would not have been found meritorious. Moreover, even if Appellant could demonstrate he met the first prong of the ineffectiveness test, he has failed to establish how the brief reference to him being in possession

of weapons that were not consistent with the murder weapon prejudiced him.

Id. at *10.

Once again, Petitioner has failed to demonstrate that the Superior Court's determination was contrary to, or an unreasonable application of Strickland, or based on an unreasonable determination of facts. As to the sufficiency of counsel's performance, this Court is bound by the Superior Court's determination that Pennsylvania law entitled the prosecution "to probe Appellant's credibility and the question of whether he had access to weapons on cross-examination[.]" Cf. Bradshaw v. Richey, 546 U.S. at 76. An attorney does not provide ineffective assistance by failing to raise meritless objections or file meritless motions.[6] Sanders, 165 F.3d at 253. Accordingly, this claim should be denied.

### E. Certificate of Appealability

A certificate of appealability should be denied, as jurists of reason would not debate that Petitioner has failed to show entitlement to relief. Slack v. McDaniel, 529 U.S. 473, 484-85 (2000).

## III.   CONCLUSION

For the reasons set forth above, it is respectfully recommended that the Petition, ECF No. 1, be denied. It is further recommended that a certificate of appealability be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Objections are to be submitted to the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219. Failure to timely file objections will waive the right to appeal.

---

[6] Because counsel's performance was not deficient, there is no need to address prejudice.

<u>Brightwell v. Lehman</u>, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.


Dated: November __7__, 2024                    Respectfully submitted,

                                               MAUREEN P. KELLY
                                               UNITED STATES MAGISTRATE JUDGE



cc:    Hon. Arthur J. Schwab
       United States District Judge


       Wiley Estill Gambrel
       NM-5383
       SCI Houtzdale
       P.O. Box 1000
       209 Institution Drive
       Houtzdale, PA 16698-1000


       All counsel of record (*via* CM/ECF)